UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Civil Action No. 5:23-cv-00039-LLK

**WILLIAM B.**                                                                                                          **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                               **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Disability Insurance Benefits (DIB) and his claim for Supplemental Security Income under Titles II and XVI of the Social Security Act. Plaintiff's memorandum in support of judicial review is at Doc. 11-1, and the Commissioner's response in opposition is at Doc. 13. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 9].

Because Plaintiff's sole argument is unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence and is in accord with applicable legal standards, this Opinion will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**The ALJ's decision**

On December 21, 2021, the ALJ issued the Commissioner's final decision. [Administrative Record, Doc. 8 at 15-25]. The ALJ denied Plaintiff's claims, finding lack of disability during the period from May 1, 2019, when Plaintiff alleges that he became disabled, through December 21, 2021, when the ALJ issued her decision. *Id.*

The ALJ's decision was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2019, when he alleges that he became disabled. *Id.* at 18.

Second, the ALJ found that Plaintiff has the following severe, or vocationally significant, physical impairments: ischemic cardiomyopathy with pacemaker, coronary artery disease with history of bypass grafting, chronic obstructive pulmonary disease (COPD), hypertension, and obesity. *Id.*

The ALJ found that Plaintiff has the following severe mental impairments: major depressive disorder, bipolar disorder, and post-traumatic stress disorder (PTSD). *Id.*

Third, the ALJ found that Plaintiff does not have an impairment that satisfies the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 39.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, notwithstanding his physical impairments, Plaintiff can:

> … perform a range of light work as defined in 20 CFR 404.1567(b) … can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently … can stand, sit, and walk each up to 30 minutes at a time, for a total of up to six hours each in an 8-hour workday with normal breaks … should never climb ladders/ropes/scaffolds but can frequently climb ramps or stairs … can frequently stoop, kneel, crouch, and crawl … should avoid concentrated exposure to vibrations, fumes, odors, dusts, gases and poor ventilation … should never be exposed to unprotected heights or dangerous machinery.

*Id.* at 20.

The ALJ found that, notwithstanding his mental impairments, Plaintiff can:

> … understand, remember and carry out simple instructions and non-detailed tasks, requiring little independent judgment and involving minimal variation … maintain attention and concentration for two-hour segments over an eight-hour period and complete a normal workweek … respond appropriately to supervisors and co-workers sufficient for task completion … can have no contact with the public … can adapt to routine changes and avoid hazards in a work setting with routine support and structure.

*Id.*

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 23.

Fifth, the ALJ found that Plaintiff can perform a significant number of unskilled light jobs in the national economy such as mail sorter, routing clerk, and marker. *Id.* at 24.

**Judicial review of Step Three denial decisions**

Plaintiff's sole argument is that the ALJ's finding that his impairments do not satisfy Listing 4.02 is not supported by substantial evidence and is not in accord with applicable legal standards. [Doc. 11-1].

Plaintiff carries the burden of proving that the medical criteria of a listed impairment are satisfied, and this burden is construed strictly because the listing represents an automatic screening in of an impairment as disabling (independently of any other medical or vocational factor).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sec'y of Health & Human Servs. v. Zebley*, 493 U.S. 521, 530 (1990); *see also Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.").

But an ALJ must "actually evaluate the evidence, compare it to ... the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.*

**Plaintiff's argument and the ALJ's findings relevant to that argument**

Plaintiff's sole argument is that the ALJ's finding that his impairments do not satisfy Listing 4.02 is not supported by substantial evidence and is not in accord with applicable legal standards. [Doc. 11-1].

Listing 4.02 provides that the following impairment (chronic heart failure) is disabling:

4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

A. Medically documented presence of one of the following:

   1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

   2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than

3

> or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
>> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC [medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>>
>> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>>
>> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>>
>>> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
>>>
>>> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
>>>
>>> c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>>>
>>> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

Listing 4.02.

Listing 4.02 (quoted above in its entirety) is structured such that a claimant must prove the presence of the medical condition described in (A)(1) or (A)(2) plus the severity level described in (B)(1), (B)(2), or (B)(3).

The ALJ found that Plaintiff's impairments do not satisfy Listing 4.02 because:

> … he does not have systolic or diastolic failure resulting in 1) persistent symptoms of heart failure which very seriously limit his ability to actively initiate, sustain, or complete activities of daily living; 2) three or more separate episodes of acute congestive heart failure within a consecutive 12-month period; or 3) an inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less.

*Id.* at 18.

This Opinion finds that the ALJ's above finding lacks detail in the sense that it is unclear which of the following five requirements the ALJ believed was **not** satisfied: (A)(1), (A)(2), (B)(1), (B)(2), and/or (B)(3).

Nevertheless, Plaintiff appears to be arguing that the ALJ found or assumed that (A)(1) was satisfied and erroneously found that (B)(1) was not satisfied. [Doc. 11-1]. From the best this Opinion can tell, Plaintiff is not arguing that (A)(2), (B)(2), or (B)(3) was satisfied.

**Plaintiff fails to show that Listing 4.02(B)(1) is satisfied.**

Plaintiff's argument is unpersuasive because Listing 4.02(B)(1) requires, among other things, "[p]ersistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living." Listing 4.02. Plaintiff ignores the fact that the ALJ found that he is relatively unlimited in his activities of daily living. Specifically, the ALJ found, in determining that Plaintiff has an RFC for light work, that:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

[Doc. 8 at 22].

To the extent Plaintiff is arguing that it is improper for a reviewing court to look to the ALJ's findings in other parts of her decision (not just the ALJ's findings regarding the listing), this Opinion is unpersuaded. *See e.g. Forrest v. Comm'r*, 591 F. App'x. 359, 365-66 (6th Cir. 2014) (affirming ALJ's decision at Step Three despite "sparse analysis" because "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion.").

To the extent Plaintiff is arguing that his daily activities are limited enough to satisfy Listing 4.02 because his heart condition is classified as New York Heart Association (NYHA) Class II, this Opinion is unpersuaded. The Commissioner appends a copy of the NYHA classification system. [Doc. 13-1]. There are four classes. *Id.* Each class is defined in terms of the degree of limitation (in terms of fatigue, dyspnea, palpitation, or angina) caused by ordinary physical activity. *Id.* Class I corresponds to no limitation; Class II to mild limitation; Class III to moderate limitation; and Class IV to severe limitation. *Id.* The ALJ found that Plaintiff's Class II heart impairment does not satisfy Listing 4.02 but does restrict him to light work.

To the extent Plaintiff is arguing that *Wilder v. Comm'r*, 2021 WL 203196 (E.D. Ky. Jan. 20, 2021) supports his position, this Opinion is unpersuaded. As stated above, Listing 4.02 is structured such that a claimant must prove the presence of the medical condition described in (A)(1) or (A)(2) plus the severity level described in (B)(1), (B)(2), or (B)(3). In *Wilder*, the Commissioner conceded that (A)(1) was satisfied, and it was unclear whether (B)(3) was satisfied. Thus, the district court remanded for a new decision containing additional findings regarding (B)(3) that would allow for "meaningful judicial review." *Id.* at *7. The present case is distinguishable because the Commissioner does not concede that (A)(1) is satisfied, and Plaintiff attempts to show that (B)(1) is satisfied.

This Opinion finds that *Wilder* detracts from Plaintiff's attempt to show that (B)(1) is satisfied because the district court held that Wilder could not satisfy (B)(1) as he admitted he could perform normal "activities of daily living." *Id.* at *5. While Plaintiff makes no such admission, the ALJ found that his daily activities are relatively unlimited [Doc. 8 at 22], and that finding is supported by substantial evidence.

Plaintiff persuasively argues that he is an "individual for whom … the performance of an exercise test would present a significant risk" as contemplated by Listing 4.02(B)(1) because:

> By regulation the Commissioner deems the implant of a cardiac defibrillator a significant risk which contraindicates an exercise test. In the prefatory language of the cardiovascular listings, the Commissioner states "we will not purchase an exercise test when an MC [medical consultant] finds that you have one or more of the following significant risk factors…(iii) An implanted cardiac

6

> defibrillator…" 20 CFR Part 404, Subpart P, Appendix 1, § 4.00(C)(8)(a)(iii). Mr. Byrnes received a cardiac defibrillator implant on April 8, 2019. (AR p. 964) Therefore, Mr. Byrnes satisfies that requirement under Listing 4.02(B)1.

[Doc. 11-1]. But Plaintiff was still required to prove "[p]ersistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living." Listing 4.02(B)(1). *See Sec'y of Health & Human Servs. v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

### Plaintiff fails to show that Listing 4.02(A)(1) is satisfied.

While it seems not to be of case-dispositive significance, as stated above, the Commissioner does not concede that Listing 4.02(A)(1) is satisfied.

> Listing 4.02(A)(1) contemplates:
>
> Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure);

Listing 4.02.

> Plaintiff states that:
>
> On October 4, 2018 a Lexiscan stress test revealed Mr. Byrnes' ejection fraction to be at 30%. (AR pp. 763-764).
>
> On January 4, 2019, a multigated acquisition (MUGA) scan revealed that Mr. Byrnes ejection fraction was 23%. (AR p. 758).
>
> There is no indication in the record of a higher ejection fraction since January 2019.

[Doc. 11-11].

In her written decision, the ALJ acknowledged that "[t]reatment records from January 2019 noted that he had severely diminished ejection fraction as low as 23%." [Doc. 8 at 21]. The Commissioner acknowledges the 23% ejection fraction in January 2019 and Plaintiff's claim of no "indication of a higher ejection fraction since that date." [Doc. 13].

Nevertheless, the Commissioner persuasively argues that Listing 4.02(A)(1) is not satisfied because:

> … for this ejection fraction level to satisfy the listing criteria, Plaintiff must show that it occurred during a period of stability. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02A. And as Plaintiff indicated, he was hospitalized for three days in December 2018 for severe chest discomfort (Pl. Br. 3 citing Tr. 503) and then in April 2019, he required stent placement and bypass grafting with pacemaker insertion (Tr. 21, 964). Therefore, there has been no showing that Plaintiff's ejection fraction results were taken during a period of stability, thus he cannot establish that he meets or medically equals a listing since he fails to satisfy this part of Listing 4.02A(1).
>
> Plaintiff next notes that he had various cardiac episodes between 2014 and 2019 and underwent bypass surgery after which a graft failed (Pl. Br. 9). But, as Plaintiff describes in his fact section (Pl. Br. 2-4), the majority of these episodes occurred prior to his amended alleged onset date in May 2019 (Tr. 42), and thus they fail to depict his functioning during the relevant period.  And as the ALJ found, Plaintiff improved after his April 2019 stent and pacemaker placement, as he denied any claudication, edema, fatigue, orthopnea, palpitations, paroxysmal nocturnal dyspnea, or shortness of breath and reported that his pain level was one out of ten (Tr. 21 citing Tr. 1665-1682).

[Doc. 13 at 1812].

Consistently with the Commissioner's argument, in discussing the requirements of Listing 4.02, Medical Proof of Social Security Disability observes that it can be "difficult to determine where severe, chronic heart failure starts and where acute heart failure ends."  § 5:16. Chronic heart failure, Med. Proof of Soc. Sec. Disab. 2d § 5:16 (2022 ed.).  In this case, Plaintiff does not show that his measured low ejection fraction occurred during a "period of stability," which is the hallmark of a chronic as opposed to an acute heart impairment.

## Order

Because Plaintiff's sole argument is unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence and is in accord with applicable legal standards, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's complaint is DISMISSED.

July 18, 2023

Lanny King, Magistrate Judge
United States District Court